IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02560-MSK-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

WENDY CABRERA,

    Intervenor Plaintiff,

v.

THE ORIGINAL HONEYBAKED HAM COMPANY OF GEORGIA, INC.,

    Defendant.

## ORDER ON MOTION TO COMPEL

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant HBH's Motion to Compel under Fed. R. Civ. P. 37 [filed September 6, 2012; docket #177 (sealed docket #172)]. The motion is referred to this Court for disposition. (Docket #173.) The matter is fully briefed, and on November 6, 2012, the Court held oral argument. For the reasons that follow, the Court **grants in part** and **denies in part** Defendant's motion.

**I.    Background**

Plaintiff Equal Employment Opportunity Commission (EEOC) brings claims of sexual harassment and hostile environment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, alleging Defendant subjected a class of female employees (between 20 and 22 persons) to sexual harassment and retaliated against such employees when they complained about the harassment.

In the present motion, Defendant seeks numerous categories of documents designed to

examine the class members' damages – emotional and financial – as well as documents going to the credibility and bias of the class members. I will address each category below. I need to emphasize that it is my job to ensure production of documents that may lead to the discovery of admissible evidence. I am not determining what is admissible at trial. In addition, Defendant spends significant time addressing what the EEOC has and has not produced. As the EEOC demonstrates in its response brief, some of Defendant's representations in this regard are not accurate. Because of this, and because Defendant's requests are a significant (albeit, as I explain below, in certain respects justifiable) intrusion into the class member's semi-private lives, and because the whole area of social media presents thorny and novel issues with which courts are only now coming to grips, I will not determine this motion or any sanctions based on what should or should not have been provided prior to this Order, nor will I apportion fault in failing to produce documents or information prior to this Order.

**II.     Analysis**

        A.      <u>Full Unredacted Social Media Content, Text Messages, Etc.</u>

Many of the class members have utilized electronic media to communicate – with one another or with their respective insider groups – information about their employment with/separation from Defendant HBH, this lawsuit, their then-contemporaneous emotional state, and other topics and content that Defendant contends may be admissible in this action. As a general matter, I view this content logically as though each class member had a file folder titled "Everything About Me," which they have voluntarily shared with others. If there are documents in this folder that contain information that is relevant or may lead to the discovery of admissible evidence relating to this lawsuit, the presumption is that it should be produced. The fact that it exists in cyberspace on an electronic device is a logistical and, perhaps, financial problem, but not a circumstance that removes

the information from accessibility by a party opponent in litigation.

To set the playing field, the relief the class members are seeking varies from claimant to claimant but includes (1) back pay; (2) emotional damages[1]; and (3) front pay or reinstatement. The cumulative exposure to the Defendant is most definitely well into the low-to-mid seven-figure range. This is important to note when addressing whether the potential cost of producing the discovery is commensurate with the dollar amount at issue.

There is no question the Defendant has established that the documents it seeks contain discoverable information. Defendant has shown, for example, that Plaintiff-Intervenor Cabrera posted on her Facebook account statements that discuss her financial expectations in this lawsuit[2]; a photograph of herself wearing a shirt with the word "CUNT" in large letters written across the front (a term that she alleges was used pejoratively against her, also alleging that such use offended her)[3]; musings about her emotional state in having lost a beloved pet as well as having suffered a broken relationship[4]; other writings addressing her positive outlook on how her life was post-termination[5]; her self-described sexual aggressiveness[6]; statements about actions she engaged in as a supervisor with Defendant (including terminating a woman who is a class member in this case); sexually

---

[1] One item in the record references Plaintiff-Intervenor's hope to recover $400,000, which, given the facts of the case, would consist mostly of compensatory damages.

[2] *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 125 (2d Cir. 2005) (financial motive relevant).

[3] *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986) (in sexual harassment case, totality of circumstances including plaintiff's own conduct is potentially relevant).

[4] *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 293 (E.D.N.Y. 2010) (discussing impact of non-work related stressors in analyzing award of compensatory damages).

[5] *Id.*

[6] Fed. R. Evid. 412(b)(2) addresses admissibility of this type of evidence, an analysis that Judge Krieger may have to utilize.

amorous communications with other class members[7]; her post-termination employment and income opportunities and financial condition; and other information. I view each of these categories as potentially relevant in this lawsuit. If all of this information was contained on pages filed in the "Everything About Me" folder, it would need to be produced. Should the outcome be different because it is on one's Facebook account? There is a strong argument that storing such information on Facebook and making it accessible to others presents an even stronger case for production, at least as it concerns any privacy objection. It was the claimants (or at least some of them) who, by their own volition, created relevant communications and shared them with others.

The EEOC raises a valid objection concerning the vagueness of the Defendant's discovery requests, especially insofar as they allegedly seek text messages. Defendant counters that the broad definition of "document" used in the requests is sufficient to cover texts and the other material sought here. I do not believe the proper remedy in this instance is to deny the document request and require Defendant to draft a new one. Defendant's definition of "document" is sufficient to cover text messages, and I believe it would the best course to allow the discovery discussed below.

Given the fact that Defendant has already obtained one affected former employee's Facebook pages, and that those pages contain a significant variety of relevant information, and further, that other employees posted relevant comments on this Facebook account, I agree that each class member's social media content should be produced, albeit *in camera* in the first instance. I do not believe this is the proverbial fishing expedition; these waters have already been tested, and they show that further effort will likely be fruitful. However, I am appreciative of privacy concerns and am not sold on all of Defendant's alleged areas of relevant information, particularly regarding expressions of positive attitude about this or that. Therefore, I will establish a process designed to

---

[7]*Id.*

4

gather only discoverable information. To accomplish this, I will utilize a forensic expert as a special master as needed. Plaintiff-Intervenor and the class members shall provide the following directly and confidentially to the special master:

1. Any cell phone used to send or receive text messages from January 1, 2009 to the present;

2. All necessary information to access any social media websites used by such person for the time period January 1, 2009 to present;

3. All necessary information to access any email account or web blog or similar/related electronically accessed internet or remote location used for communicating with others or posting communications or pictures, during the time period January 1, 2009 to present.

The parties will collaborate to create (1) a questionnaire to be given to the Claimants with the intent of identifying all such potential sources of discoverable information; and (2) instructions to be given to the Special Master defining the parameters of the information he will collect. These should be provided to the Court no later than **November 14, 2012**. If there are areas of dispute, the parties should provide to the Court a copy of each document, each of which should clearly distinguish between agreed-upon language and disputed language. As to the disputed language, the parties should footnote each area of dispute and briefly state their respective positions. I will review the material, make any necessary decisions, and return the questionnaire by **November 16, 2012**, with the hope that the questionnaire will be given to the Claimants and the requested information returned no later than **November 30, 2012**, at which time the Special Master may begin his work.

The Court will receive in hard copy all information yielded by this process, review the information *in camera* and require the production to Defendant of only that information which the

Court determines is legally relevant under the applicable rules. The Court will then deliver relevant material to the EEOC, which shall conduct a privilege review, designate the material as appropriate under the Protective Order in this case, then deliver the nonprivileged material to defense counsel along with a privilege log containing any withheld information. All irrelevant material will also be returned to the EEOC. I will provide the EEOC an opportunity to make a record of objections to the material I determine to be relevant.

The cost of forensic evaluation will be borne equally by the Plaintiff/Claimants and the Defendant. I previously considered having the Defendant bear the cost of this effort; however, I do not believe this is consistent with the Federal Rules of Civil Procedure. The information ordered to be produced is discoverable – information which, if it exists, was created by the Claimants. In the event, as the EEOC believes, this effort produces little or no relevant information, I may, upon motion, revisit this allocation and relieve the Plaintiff/Claimants of monetary responsibility.

  B. <u>Income Information</u>

In a Title VII case, a plaintiff's financial and income information can be relevant. *E.g.*, *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1213 (11th Cir. 2010). This includes tax return information, *e.g.*, *Hunter v. General Motors Corp.*, 149 F. App'x 368, 373 (6th Cir. 2005) ("Because Hunter knew that he had received a substantial salary during the relevant tax year, yet failed to claim such a taxable source of income, the return did indeed reflect upon the plaintiff's truthfulness and was, therefore, admissible at trial."), and unemployment benefits, *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1555 (10th Cir. 1988) ("The decision whether to offset unemployment compensation is within the trial court's discretion."). Obviously, a calculation of back pay utilizes subsequent income as a potential mitigation.

Here, Defendant seeks a wide range of financial information to include "bank records" and

"promissory notes," as well as records of government assistance. I believe this is overbroad, at least at this time. I do not believe a Title VII plaintiff's overall financial condition is relevant. What is relevant for a separated employee (whether by termination or constructive discharge) is income information. I believe tax returns, unemployment compensation, and all information concerning income derived from labor are relevant and subject to discovery. Thus, for each class member and the Plaintiff-Intervenor who seeks to recover back pay in this action, such information for the time period after separation from Defendant should be produced. At the oral argument, Defendant renewed its request that I require production of bank records due to deficiencies in the EEOC's efforts to collect relevant financial information. However, it was clear to me that the interactive process between the EEOC and the Defendant in attempting to obtain this information has not been exhausted. Therefore, the denial of bank record information is without prejudice in the event Defendant establishes at a later date that the EEOC's efforts to obtain income information has been inadequate.

        C.        <u>Information Concerning Prior Legal Proceedings</u>

Defendant seeks information concerning any other legal proceedings in which a class member or Plaintiff-Intervenor has been involved. Information regarding other lawsuits is at least potentially relevant, *Vance v. Union Planters Corp.*, 209 F.3d 438, 445 (5th Cir. 2000); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490 (7th Cir. 1998), and should be produced. I do not believe this information should be subject to any time limit. In my experience, disclosure of all prior legal proceedings of any kind are typical at the beginning of any deposition. I see no reason why the same cannot be accomplished through written discovery. Like all other information that I am ordering to be produced here, it will be up to Judge Krieger to decide whether it is admitted at trial. In the event the EEOC believes *all* responsive information has been produced, it should so affirmatively

state in a response to Defendant.

      D.     <u>Reopening of Cabrera Deposition</u>

Defendant has provided a sufficient ground, on the basis of subsequently acquired evidence, to take an additional two hours of Ms. Cabrera's deposition. The parties shall arrange the deposition at their convenience.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant HBH's Motion to Compel under Fed. R. Civ. P. 37 [filed September 6, 2012; docket #177 (sealed docket #172)] as set forth herein. In the event the parties believe that a status conference is necessary to clarify or implement this Order, they are directed to contact my chambers for an immediate setting.

Dated at Denver, Colorado, this 7th day of November, 2012.

                              BY THE COURT:

                              *[signature]*

                              Michael E. Hegarty
                              United States Magistrate Judge