**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-02560-MSK-MEH**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**THE ORIGINAL HONEYBAKED HAM COMPANY OF GEORGIA, INC.,**

    Defendant.

**Consolidated with:**

**Civil Action No. 12-cv-02137-MSK-MEH**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

**WENDY J. CABRERA,**

    Intervenor-Plaintiff,

v.

**THE ORIGINAL HONEYBAKED HAM COMPANY OF GEORGIA, INC.,**

    Defendant.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**

---

    **THIS MATTER** comes before the Court on a Motion to Dismiss **(#42)** filed by the Defendant, The Original HoneyBaked Ham Company of Georgia, Inc. (hereafter, HBH). Plaintiff, the Equal Employment Opportunity Commission (hereafter, the EEOC), responded

1

(**#62**), and HBH replied (**#83**). Having considered those documents, as well as pertinent portions of the record, the Court now finds and concludes as follows.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issues Presented

The EEOC brings this enforcement action under 42 U.S.C. § 2000e-5(f). In its Amended Complaint (**#6**), the EEOC asserts two claims for relief against HBH: (1) sex discrimination resulting from a sexually hostile work environment created by James Jackman "and other supervisors and managers within [HBH's District 8]," and (2) retaliation against employees who complained about a hostile work environment. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). The EEOC seeks injunctive and monetary relief on behalf of Wendy Cabrera (who has since intervened), and "a class of female employees."

In its Motion to Dismiss, HBH seeks to limit the scope[1] of the EEOC's claims. HBH argues that during the pre-litigation process, the EEOC did not give it adequate notice of alleged sex discrimination by "supervisors and managers" other than Mr. Jackman. HBH also contends that the EEOC's remedies should be limited to addressing injuries suffered by Ms. Cabrera and the eight aggrieved individuals who were identified during pre-litigation.

The EEOC responds that its pre-litigation activities were sufficient to put HBH on notice of sexual harassment by supervisors and managers other than Mr. Jackman and that it is entitled to seek a remedy for aggrieved individuals who were not specifically identified pre-litigation.

---

[1] Although HBH appears to request dismissal of claims, the Court understands HBH to be seeking to limit the scope of the asserted claims, such that they relate only to Mr. Jackman's conduct (and retaliation for making complaints about such conduct), and to limit the potential remedy for such claims.

### III. Material Facts

Generally, when ruling on a motion to dismiss, the Court limits itself to the facts stated in a complaint. However, where a motion to dismiss raises jurisdictional issues a court is permitted to consider evidence to resolve disputed material facts. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). HBH argues that the EEOC's claims must be limited because it failed to exhaust pre-litigation requirements.[2] As a consequence, HBH's motion is treated as a jurisdictional challenge.[3] The material facts are drawn from documents and exhibits attached to the Motion to Dismiss (#42) and the Response (#62).

### A. The Charge

Ms. Cabrera worked as a store manager at HBH's Highlands Ranch store until her discharge in May 2010. She then filed a formal charge of discrimination with the EEOC, alleging that (1) she and other female HBH employees had been sexually harassed by the general manager of the Highlands Ranch store, Mr. Jackman, and (2) she had been discharged in retaliation for complaining about the harassment to Donna Wagner-Rego (the District 8[4] manager), and Michael Costello (the Human Resources representative for District 8).

---

[2] Both parties argue in the context of the EEOC's obligation to "exhaust administrative remedies." Although the phraseology may be inexact – there is a distinction between "exhaustion of administrative remedies" and compliance with "pre-litigation requirements" – the concept is similar. The former usually refers to a plaintiff's completion of an administrative procedure that could provide relief before resorting to suit. The latter refers to the statutory obligation of the EEOC to advise a defendant of claims and attempt to conciliate such claims before prosecuting them. For the purposes of this matter, the Court understands the parties to refer to the latter scenario.

[3] In the Tenth Circuit, questions pertaining to "the exhaustion of administrative remedies," or "compliance with pre-litigation requirements," are treated as jurisdictional issues. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012); *Logsdon v. Turbines, Inc.*, 399 Fed.Appx. 376, 378 (10th Cir. 2010) (unpublished).

[4] District 8 includes approximately 15 HBH stores located in Colorado, Utah, and Nevada.

## B. The EEOC's Investigation

The EEOC investigated Ms. Cabrera's charge, initially requesting from HBH information that specifically related to Ms. Cabrera.[5]  An EEOC investigator visited the Highlands Ranch store and interviewed three employees.  The investigator asked the employees about their experiences working with Ms. Cabrera and/or Mr. Jackman, their observations or experiences of sexual harassment by Mr. Jackman, and any consequences for reporting alleged sexual harassment by Mr. Jackman.  Based on this investigation, the investigator made additional inquiries of HBH.  In response, HBH sent the EEOC information about Ms. Cabrera's termination, Mr. Jackman's termination, and HBH's internal investigation of Ms. Cabrera's complaints.  Finally, the EEOC obtained witness statements from two individuals who had worked with Ms. Cabrera and Mr. Jackman at the Highlands Ranch store.  The women described how they, and other female employees, had been harassed by Mr. Jackman.  One woman also explained that she was terminated after complaining about the harassment to Ms. Wagner-Rego.

## C. The EEOC's Determination

After concluding its investigation, the EEOC issued a Determination of Ms. Cabrera's charge.  The Determination letter stated that, having considered all the evidence, the EEOC found that:

> there is reasonable cause to believe that [HBH] violated Title VII in that [Ms. Cabrera] and a class of female employees were subjected to a hostile work environment as a result of gender discrimination by a supervisor. . . . [Also, HBH] discriminated and retaliated against [Ms. Cabrera] and other employees who engaged in protected conduct by reporting sexual harassment to [HBH]'s management and participating in investigation of the allegations.

---

[5] The EEOC requested (1) a copy of Ms. Cabrera's personnel file, (2) a copy of HBH's investigation file related to Ms. Cabrera's complaints of harassment, and (3) specific evidence of the alleged "security violations" that led to Ms. Cabrera's termination.

The Determination stated that the finding was final and invited HBH to conciliate the charges with the EEOC.

### D. Conciliation

During the conciliation process, the EEOC requested monetary relief for Ms. Cabrera and eight other aggrieved individuals that it contended were subjected to a hostile work environment due to the conduct of Mr. Jackman. One of the aggrieved individuals purportedly was discharged in retaliation for complaining of Mr. Jackman's conduct. The EEOC's counsel explained that the "basis for seeking punitive damages was the fact that [Ms. Wagner-Rego] and [Mr. Costello] failed to take appropriate action when Ms. Cabrera complained about Mr. Jackman, and instead they retaliated against employees who complained."

Although the EEOC advised HBH that it would likely discover more victims if the case proceeded to litigation, it refused to identify the "purported class members" or provide any information about the scope of the "purported class" and the basis of the claims and damages. Because it allegedly could not assess the scope of the charges that were asserted, HBH made no counterproposal and did not engage in further negotiations.

### E. This Litigation

On September 29, 2011, the EEOC initiated this action. The initial Complaint (**#1**) alleged (1) sex discrimination resulting from a hostile work environment created by Mr. Jackman sexually harassing "female employees at the Highlands Ranch [store], and other HoneyBaked Ham stores under his supervision," and (2) retaliation against Ms. Cabrera and "a class of female employees" who complained about the hostile work environment.

Before HBH filed its response, however, the EEOC filed an Amended Complaint (**#6**). The nature of the claims remained the same, but the scope of each claim was broadened to

5

include conduct by supervisors other than Mr. Jackman and retaliation for complaints about conduct other than that by Mr. Jackman. The Amended Complaint alleges that "throughout the period of Wagner-Rego's employment," female employees who worked with Mr. Jackman and "other supervisors and managers within the district and under Costello's oversight," specifically Long Armstrong, were subjected to a sexually hostile work environment. It further alleges that although Ms. Cabrera and other female employees complained to "their immediate superiors and/or Headquarters" about the harassment, HBH did not appropriately respond to the complaints, and instead, HBH "managers and supervisors" retaliated against employees by "disciplining, discharging, affecting terms and conditions, and otherwise penalizing employees for engaging in protected activity."

The parties agreed to reenter negotiations. The EEOC sent HBH a second proposal based on the broadened claims. The EEOC stated that "perpetrators of harassment and gender based hostile work environment" included "other managers in District 8 and Human Resources personnel at HBH Headquarters," and that additional women who had opposed the "discrimination permeating District 8" had been subjected to retaliation. The EEOC stated that there were 17 aggrieved individuals at six stores within District 8, but that the total number of aggrieved individuals could fall within the range of 40 to 45. After reviewing the proposal, HBH informed the EEOC that it would not make a counteroffer and intended to press forward with litigation.

## IV. Discussion

### A. Applicable Law

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because

of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment that creates a hostile work environment is actionable as sex discrimination under Title VII. *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67 (1986). Title VII also makes it unlawful for an employer to retaliate, in the form of an adverse employment action, against an employee who has opposed an unlawful employment practice or who has made a charge, testified, assisted, or participated in an investigation of an unlawful employment practice. 42 U.S.C. § 2000e-3(a); *Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002).

An action for violation of Title VII can be brought by the person affected or by the EEOC. Here, the EEOC brings an enforcement action under 42 U.S.C. § 2000e-5(f). In this type of action, the EEOC can request injunctive or monetary "relief for a group of aggrieved individuals." *Gen. Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 324 (1980). Individuals can also intervene to assert their own claims.

Before initiating this type of enforcement action, the EEOC is required to engage in specific pre-litigation activities designed to provide a full opportunity for resolution of the charges it intends to bring. *See EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1184-85 (4th Cir. 1981). The EEOC must: (1) have received a formal charge of discrimination against the employer; (2) given notice of the charge to the employer; (3) investigated the charge; (4) made and given notice of its determination that there was reasonable cause to believe that a violation of Title VII occurred; and (5) made a good faith effort to conciliate the charges. 42 U.S.C. § 2000e-5(b); *see Am. Nat'l Bank*, 652 F.2d at 1185. "Two important purposes are served by satisfaction of these pre-adjudicative administrative requirements: first, the employer is notified of the alleged violations; and second, the EEOC has the opportunity to attempt resolution of the charges through conciliation and voluntary compliance." *EEOC v. Outback Steak House of Fla.*,

520 F.Supp.2d 1250, 1262 (D.Colo. 2007) (quoting *Am Nat'l Bank*, 652 F.2d at 1185). These pre-litigation requirements are generally considered to be "*sequential steps in a unified scheme* for securing compliance with Title VII." *EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974) (emphasis in original); *EEOC v. CRST Van Expedited*, 679 F.3d 657, 672 (8th Cir. 2012); *Am. Nat'l Bank*, 652 F.2d at 1185 (citing *EEOC v. E .I. DuPont de Nemours & Co.*, 373 F.Supp. 1321, 1336 (D.Del. 1974), *aff'd*, 516 F.2d 1297 (3d Cir. 1975)). Once litigation begins, the pre-litigation investigation and conciliation phase is concluded. *See CRST Van Expedited*, 679 F.3d at 675 (the EEOC may not use discovery as a "fishing expedition" to uncover more violations).

### B. Analysis

As summarized earlier, HBH presents two arguments based on the limited disclosures made by the EEOC in the pre-litigation process. First, HBH argues that the EEOC's claims should be limited to the unlawful conduct of Mr. Jackman in District 8, and retaliation associated with complaints of his conduct. Second, it argues that any remedy sought by the EEOC for "aggrieved individuals" should be limited to injuries suffered by Ms. Cabrera and the eight individuals identified by the EEOC during pre-litigation conciliation. The EEOC responds that its pre-litigation disclosures were sufficient to put HBH on notice that its claims would extend to conduct by managers and supervisors other than Mr. Jackman, and that it would seek a monetary award on behalf of aggrieved individuals who were not disclosed pre-litigation.

Before addressing these issues, and specific case law offered by the parties, it is important to define the terminology that the Court will use in this case. Decisional authority found in other cases refers to a "claim" in different ways. The term "claim" is used variously to describe (1) the allegations made by a charging party to the EEOC, (2) findings made by the

EEOC in its determination, (3) allegations that are the subject of conciliation, (4) circumstances that impact aggrieved individuals, or (5) an enumerated "claim for relief" in a complaint in a lawsuit brought by the EEOC. Here, the term "claim" will be limited to a "claim for relief" asserted in the Complaint or Amended Complaint.

There is also some inconsistency in pertinent decisions with regard to the word "class." Counsel and courts sometimes casually describe actions of this type as "class" actions or actions brought by the EEOC on behalf of a "class" of employees. Such shorthand is a bit misleading. Technically, an EEOC enforcement action is not a class action brought in accordance with Fed. R. Civ. P 23. Nor does the EEOC bring claims on behalf of, or stand in the shoes of, individual plaintiffs. 42 U.S.C. 2000e-5(f)(1). *See Gen. Tel.*, 446 U.S. at 323-324; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297-98 (2002). In an enforcement action, the EEOC brings a claim in its own capacity. If it prevails on its claim, then it can seek a variety of remedies, including a monetary award for those individuals who were "aggrieved by the unlawful conduct." [6] Thus, for purposes of clarity, the Court will not refer to any "class," but will instead refer to "aggrieved individuals" to describe those persons for whom the EEOC may seek an award based on the unlawful conduct proven.

### 1. Scope of Harassment and Retaliation Claims

HBH argues that because the EEOC, throughout the pre-litigation process, focused solely on allegations of sexual harassment by Mr. Jackman and retaliatory actions taken against employees who complained of his harassment, it can bring claims based only on such conduct. The EEOC responds that it referred to retaliatory conduct by Ms. Wagner-Rego and Mr. Costello

---

[6] Who is an "aggrieved individual" depends upon what unlawful conduct is proved. For example, if the proven unlawful conduct is sexual harassment resulting in a hostile work environment, the aggrieved individuals would be those who were subjected to the conduct. If the unlawful conduct is retaliation, the aggrieved individuals would be those who suffered from making the complaint about the underlying conduct.

who supervised the entirety of District 8, and such reference put HBH on notice that the conduct of managers and supervisors other than Mr. Jackman was at issue. The EEOC also argues that allegations of harassment by managers and supervisors other than Mr. Jackman reasonably grew out of the investigation of Ms. Cabrera's charge.

Neither of the EEOC's arguments is persuasive. Beginning with the EEOC's last point, it is true that once the EEOC resorts to civil litigation, it can pursue claims of illegal conduct beyond that alleged in the complaining party's original charge if the additional illegal conduct was discovered during the course of a reasonable investigation of the original charge. *See EEOC v. Jillian's of Indianapolis*, 279 F.Supp.2d 974, 979 (S.D.Ind. 2003); *Outback Steak House*, 520 F.Supp.2d at 1263; *CRST Van Expedited*, 679 F.3d at 674. However, for the EEOC to pursue claims based on additional wrongdoing, it must still give notice to the employer-defendant of the newly discovered conduct and provide an opportunity to conciliate all charges before a lawsuit is filed. *Outback Steak House*, 520 F.Supp.2d at 1263 (citing *EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1976)); *see also EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992).

Assuming that the EEOC's investigation of Ms. Cabrera's charge reasonably led to discovery of wrongdoing by other HBH managers, before filing suit the EEOC only gave formal notice of and attempted to resolve charges arising from the unlawful conduct of Mr. Jackman. There was nothing in the EEOC's investigation, determination letter, or the subsequent conciliation that identified unlawful conduct of any manager or supervisor other than Mr. Jackman. Indeed, the EEOC's Determination letter described the unlawful conduct of only "a supervisor," a singular reference. This singular focus continued during pre-litigation conciliation, in which the EEOC sought relief on behalf of Ms. Cabrera and eight other

10

individuals. Indeed, the comment of counsel for the EEOC with regard to punitive damages was premised on HBH's failure to take appropriate action with regard to complaints about behavior by Mr. Jackman, not any other supervisor or manager.

The EEOC's argument that it gave informal notice to HBH of unlawful conduct by "other supervisors or managers" by asserting retaliation by Ms. Wagner-Rego and Mr. Costello is also unpersuasive. By its nature, a retaliation claim is related to and arises from a complaint about an "unlawful employment practice." 42 U.S.C. § 2000e-3(a). Ms. Wagner-Rego and Mr. Costello had responsibility for dealing with complaints from the store(s) where Mr. Jackman worked, and any complaints about Mr. Jackman's conduct would have been made to Ms. Wagner-Rego and Mr. Costello. Although Ms. Wagner-Rego and Mr. Costello were responsible for supervising other stores in District 8, complaints of retaliation by them does not suggest the existence of unlawful conduct outside of that by Mr. Jackson. Put another way, because the only unlawful conduct disclosed to HBH was sexual harassment by Mr. Jackman, and complaints about his conduct would have been addressed by Ms. Wagner-Rego and Mr. Costello, it is reasonable for HBH to assume that any alleged retaliation by them would have arisen from Mr. Jackman's conduct. Even if allegations of retaliation by Ms. Wagner-Rego and Mr. Costello were deemed sufficient to put HBH on notice of unlawful conduct by supervisors or managers other than Mr. Jackman, the EEOC made no attempt to conciliate such charges prior to bringing this lawsuit.

For the foregoing reasons, the Court finds that the EEOC's claim of sex discrimination is limited to conduct by Mr. Jackman, and its retaliation claim is limited to retaliation for complaints about Mr. Jackman's conduct.

### 3. Aggrieved Individuals

In similar vein, HBH argues that because the EEOC only identified Ms. Cabrera and eight others as aggrieved individuals in the pre-litigation process, it is limited to that group as a basis for any monetary remedy in this action. The EEOC responds that so long as HBH was on notice of the charges against it, it may seek relief on behalf of any individual aggrieved by the alleged unlawful conduct.

Both parties extensively discuss a recent decision from the Eighth Circuit, *EEOC v. CRST Van Expedited*, 679 F.3d 657 (8th Cir. 2012). In *CRST*, the EEOC received a charge of sex discrimination against the defendant trucking company, based on allegations of sexual harassment of female employees by two male drivers. During its investigation, the EEOC discovered complaints against other male drivers. This led the EEOC to expand its investigation to the entire company.

The EEOC brought suit under 42 U.S.C. 2000e-5(f) on behalf of the charging party and "similarly situated female employees." In pre-trial discovery, the EEOC ultimately identified some 270 aggrieved individuals, which number was narrowed to 67. Later, the trial court dismissed all of the EEOC's claims due to the EEOC's failure to exhaust administrative remedies. The court found that the EEOC had not (1) investigated the specific allegations of any of the 67 allegedly aggrieved individuals, (2) identified any of the 67 individuals in its letter of determination, (3) made a reasonable cause determination as to the specific allegations of any of the 67 individuals, nor (4) attempted to conciliate any of the individuals' specific allegations. *EEOC v. CRST Van Expedited, Inc.*, 2009 WL 2524402, *16 (N.D. Iowa Aug. 13, 2009).

On appeal, the Eighth Circuit considered a number of unrelated issues, but as to the EEOC's ability to recover an award for the 67 aggrieved persons, it affirmed the trial court's

determination. Relying on the trial court's findings, it reasoned that where the pre-litigation efforts were limited – in terms of geography, number of claimants, or nature of claims – the claims that the EEOC could pursue were similarly limited.

HBH argues that *CRST* stands for the proposition that relief can be sought by the EEOC only for aggrieved persons whose identities were disclosed pre-litigation because the EEOC did not satisfy pre-litigation requirements as to any other aggrieved person.[7] The EEOC argues that *CRST* is a "true anomaly which should not be embraced by this Court." It argues that *CRST*'s rule that the EEOC must complete pre-litigation requirements with respect to each individual alleged victim imposes new, unprecedented obligations on the EEOC.

*CRST* is not binding precedent in this circuit, and there appears to be no Tenth Circuit authority that either adopts or rejects its reasoning.

This Court understands and agrees with *CRST* in its general recognition that the EEOC can bring an enforcement action only with regard to unlawful conduct that was discovered and disclosed in the pre-litigation process. To conclude to the contrary would defeat the purpose of the pre-litigation notice and conciliation requirements. In addition, this Court agrees with *CRST*'s implicit holding that pre-trial discovery is not a substitute for pre-litigation investigation, notice, and conciliation. The claims that can be asserted in an enforcement action must have been disclosed to the employer pre-litigation.

Digging somewhat deeper, however, there can be a difference between the significance of pre-litigation disclosure of the alleged unlawful conduct and pre-litigation disclosure of the specific identities and number of aggrieved persons. For meaningful conciliation to occur, the

---

[7] A number of courts have declined to apply *CRST* so rigidly. *See, e.g., EEOC v. Evans Fruit Co.*, 872 F.Supp.2d 1107 (E.D. Wash. 2012); *EEOC v. American Somoa Government*, 2012 WL 4758115 (D. Haw. Oct. 5, 2012); *EEOC v. Source One Staffing, Inc.*, 2013 WL 25033 (N.D. Ill. Jan. 2, 2013); *EEOC v. Swissport Fueling, Inc.*, 2013 WL 68620 (D. Ariz. Jan. 7, 2013).

EEOC must make the employer aware of the basis of its charges against it. *See EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1260 (11th Cir. 2003). Disclosure of the alleged unlawful conduct is essential. Only with knowledge of the alleged unlawful conduct can the employer meaningfully engage in pre-litigation conciliation, by determining its exposure and what changes in procedures or policies may be warranted. It may also be useful for the EEOC's description of the unlawful conduct to include limitations in its scope – in terms of geography, number of claimants, perpetrators, time period, or the specific nature of the conduct.

The greater the specificity in describing the alleged unlawful conduct, the less important it becomes to specifically identify aggrieved persons. If the employer understands the nature, extent, location, time period, and persons involved in the alleged unlawful conduct, it may be able to reasonably estimate the number and identities of persons who may have been impacted. For example, if the alleged unlawful conduct is sexual harassment of female subordinates by a particular supervisor at a particular location or during a particular time period, based on its own records, the employer may be able to estimate who and how many female subordinates could have been impacted. This suggests that the significance of the EEOC's failure to specifically disclose the number and identity of potential aggrieved persons during the pre-litigation process will likely vary from case to case. Thus, this Court rejects a categorical interpretation of *CRST* to limit the EEOC's remedy to aggrieved individuals who are specifically identified in the pre-litigation process.

Here, the EEOC investigated, disclosed and attempted to conciliate[8] charges of sex discrimination and retaliation arising only from Mr. Jackman's conduct at the Highlands Ranch

---

[8] The HBH argues in its Reply (**#83**) that the EEOC failed to conciliate in good faith. Both because this argument was late raised and it is unnecessary in light of the foregoing reasoning, the Court declines to address it. *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003).

14

store. Thus, the claim is limited to that conduct. In conjunction with that conduct, before filing the suit, the EEOC identified Ms. Cabrera and eight others as aggrieved persons. Subsequently, it identified others. It is not clear which of the now-identified 17 aggrieved individuals were impacted by conduct of Mr. Jackman or someone else. HBH does not argue that it was unable to ascertain from its own records the potential aggrieved individuals impacted by Mr. Jackman's conduct. Due to the clear description of the conduct, the alleged perpetrator Mr. Jackman, and the location, the Highlands Ranch store, the Court finds that HBH had sufficient notice of all potentially aggrieved individuals. The EEOC may pursue a remedy for those aggrieved individuals impacted by the conduct of Mr. Jackman, but no other supervisor or manager.

## V. Conclusion

For the forgoing reasons, the Defendant's Motion to Dismiss **(#42)** is **DENIED**, but the EEOC's claims are limited to: (1) sex discrimination resulting from a hostile work environment created by Mr. Jackman in District 8, and (2) retaliation against employees who engaged in protected activity in complaining of Mr. Jackman's harassment.

Dated this 15th day of January, 2013.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge