IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02560-MSK-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

WENDY CABRERA,

     Intervenor Plaintiff,

v.

THE ORIGINAL HONEYBAKED HAM COMPANY OF GEORGIA, INC.,

     Defendant.

---

**ORDER ON DEFENDANT HBH'S MOTION FOR SANCTIONS
UNDER FED. R. CIV. P. 37 AGAINST PLAINTIFF EEOC
FOR FAILURE TO COMPLY IN GOOD FAITH WITH THE COURT'S ORDER
AND AMENDED ORDER ON MOTION TO COMPEL**

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Defendant has filed a Motion for Sanctions [filed December 12, 2012; docket #267].  The

motion is referred to me for disposition.  (Docket #274.)  The matter is sufficiently briefed.  I heard

oral argument on the Motion on February 21, 2013.  For the reasons that follow, I **grant in part and**

**deny in part** the Motion for Sanctions.

     I have discussed the background of this case in numerous prior orders.  It involves

allegations by the EEOC that a manager of the Defendant company sexually harassed numerous

female employees, 13 of whom are seeking damages in this case ("the Claimants").  The current

Motion discusses at great length Defendant's perspective that the EEOC has engaged in bad faith

during discovery in this case.  The parties and I have expended substantial effort in their discovery

disputes, resulting in numerous motions, hearings and orders, many focusing on identifying the

content of Claimants' social media communications, necessitated by relevant evidence that a sampling of those communications has revealed. Specifically, at least some of the Claimants have been liberal in expressing their views about Defendant and their thoughts about this lawsuit using emails, texts, and blogging. The discovery of some evidence of this nature from some Claimants has prompted the Defendant to seek similar evidence from all Claimants. In several material respects, as briefly described below, the EEOC has made this endeavor more time consuming, laborious, and adversarial than it should have been.

I do not believe for purposes of this Order that I must go into great detail discussing the particulars of Defendant's well-briefed motion. I agree that the EEOC has, on several occasions, caused unnecessary expense and delay in this case. In certain respects, the EEOC has been negligent in its discovery obligations, dilatory in cooperating with defense counsel, and somewhat cavalier in its responsibility to the United States District Court. EEOC counsel has prematurely made promises about agreed-upon discovery methodology and procedure when they apparently had no authority to do so, or else had authority only to be overturned by someone in a higher pay grade, most likely situated in Washington, D.C., after the Defendant and I relied on those promises and engaged in efforts to implement the commitments previously made.

The offending conduct has been demonstrated in several aspects of the EEOC's discovery obligations. These include, without limitation, the following. First, the circumstances surrounding the EEOC's representations to this Court concerning its decision to use its own information technology personnel to engage in forensic discovery of the Claimants' social media (cell phones for texting, web sites for blogging, computers for emailing), for which I had originally appointed a special master. The EEOC unequivocally requested this change, which I made an Order of the Court on November 14, 2012 (docket #248). Weeks later, the EEOC reneged on this representation,

requiring the Court and the Defendant to go back to the drawing board.  Second, in a similar vein, the EEOC changed its position -- again ostensibly because some supervisor(s) did not agree with the decisions that the line attorneys had made -- after lengthy negotiation and agreement with Defendant concerning the contents of a questionnaire to be given to the Claimants in this case, designed to assist in identifying the social media that would be forensically examined.  The EEOC's change of mind in midstream (and sometimes well downstream) has required the Defendant to pay its attorneys more than should have been required and has multiplied and delayed these proceedings unnecessarily.  The EEOC's conduct is well documented in Defendant's Motion and Reply.

A hurdle for Defendant is that the EEOC's conduct, while inappropriate and obstreperous, does not rise to a level that is sanctionable under most rules governing the litigation process.  Both Rule 11 sanctions and the Court's inherent authority generally require a finding of bad faith.  *E.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007).[1]  I do not believe the EEOC's conduct sinks that low, regardless of how frustrating it has been to watch this discovery process unfold.  Also, I am not inclined to punish EEOC trial counsel personally, which rules out sanctions under 28 U.S.C. § 1927, *Kansas Public Employees Retirement System v. Reimer & Koger Associates*, 165 F.3d 627, 630 (8th Cir. 1999) (Section 1927 only authorizes sanctions against counsel), particularly because I believe the fault does not lie primarily with them but with higher ups.[2]  The EEOC's conduct also does not fit squarely into either Fed. R. Civ. P. 37(d) or (f) or

---

[1]The catchphrase used by the Tenth Circuit is that a court's "inherent authority to sanction" requires a party or attorney who "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *E.g., Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991)).

[2]"It is the trial court's duty, within the spirit of its total powers, . . . to impose sanctions and compensating awards of expenses, including attorney's fees, in a manner designed to solve the management problem. If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged."  *Mulvaney v. Rivair Flying Serv., Inc.*, 744 F.2d 1438 (10th Cir. 1984) (en banc).

precedent applying those sections.  Under Rule 37(b), it is a close question whether the EEOC's conduct has risen to the level of a violation of one of my orders.  I believe "in spirit" the EEOC has not been faithful in following some of my rulings, either because the EEOC did not like them, did not agree with them, or had too many items on its plate to give them the proper attention.  However, I am not prepared at this moment to find that the EEOC has disobeyed "the letter" of any particular order.[3]  Thus, as I reviewed the EEOC's conduct in this litigation, it appeared to me that no rule or doctrine concerning sanctions clearly applied here,[4] mostly because I do not believe the attorneys handling the case for the EEOC had any bad motives, but rather, "the powers that be" (as Defendant describes them) in the higher echelons of the EEOC keep interfering with the promises and commitments that the trial attorneys are making.

I have, for some time, believed that the EEOC's conduct was causing the Defendant to spend more money in this lawsuit than necessary[5] but have not known how to control it other than with criticism and veiled threats.  However, there is one remedy I have discovered that appears appropriate and necessary to me in this circumstance: a "sanction" under Fed. R. Civ. P. 16(f)(1).  Although, like some of the rules cited above, Rule 16(f) on its face appears to have a limited function (sanctions arising out of conduct concerning the scheduling or pretrial conferences), the Tenth Circuit has given it a broader, more practical application.

---

[3]In this regard, I intend to be conscientious in assuring, as is my obligation, that all orders be followed hereafter through the conclusion of this case, by both sides.

[4]And, I believe, a court ought to be very sure that something sanctionable has occurred before such enormous authority such as a monetary penalty is ordered.  "Recognizing that illiberal use of the sanction might discourage the zealous advocacy of difficult cases, we trust the imposition of attorney's fees to the cautious discretion of the district court . . . ."  *Dreiling v. Peugeot Motors of America, Inc.*, 850 F.2d 1373, 1382 (10th Cir. 1988).

[5]This includes to some extent its early efforts to expand this lawsuit beyond what the law supports, as noted in the recommendations and orders concerning the size of the Claimant class.

In *Mulvaney v. Rivair Flying Serv., Inc.*, 744 F.2d 1438 (10th Cir. 1984) (en banc), the district court did not find bad faith, but imposed a sanction for conduct that delayed the trial of the case. The district court's concern was not so much the culpability of the litigants but the outcome of their conduct, "the delays caused by negligent counsel [which] burden the taxpayers and the court system." *Id.* at 1440. In determining whether the district court abused its discretion in levying a sanction, the Tenth Circuit addressed the very issues of case management with which I have struggled in this case. Therefore, I will quote at length, because I cannot improve on the Tenth Circuit's concise analysis:

> The issue of [abuse of] discretion must not be viewed in isolation. Rather, we must look at the totality of the circumstances, including the specific case under review, the total management problems for courts, and access and cost problems for litigants. The problems of congested calendars and the disgraceful costs of litigation have been so widely discussed that they do not require further documentation. . . . While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial. Some dispute may exist concerning the dichotomy among the various authorities on which the courts may rely for sanctions [as I have noted herein]. However, there can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

> It is clear from the language and the context in which this amendment to the Rule was enacted that neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions. The intent is to impose the sanction where the fault lies. It is not necessary that the party or the party's lawyer be in violation of a court order as required for the application of Rule 37(b)(1), Federal Rules of Civil Procedure. Both the text and the Notes of the Advisory Committee make clear that concerns about burdens on the court are to receive no less attention than concerns about burdens on opposing parties.

> [T]he spirit and purpose of [Rule 16(f)] have always been within the inherent power of the courts to manage their affairs as an independent constitutional branch of government.

> . . . . Certainly the sanctions concept contained in subsection (f) is a

5

codification of the purpose to insist that the court, the lawyers and the parties abandon habits which unreasonably delay and otherwise interfere with the expeditious management of trial preparation. There is no reason, either in specific language or logic, for applying sanctions differently to pretrial matters other than the formal conferences defined and expanded in the 1983 amendments to Rule 16.

. . . . We are not dealing here with the historic concept of contempt. We are not dealing with the traditional award of attorney's fees as an adjunct of success in litigation. Nor are we dealing with the defiant refusal of an attorney or party to comply with some order of the court, such as discovery. Instead, we are dealing with the matter most critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both. The primary purpose of sanctions in this context is to insure reasonable management requirements for case preparation. The secondary purpose is to compensate opposing parties for inconvenience and expense incurred because of any noncompliance with the reasonable management orders of the court.

*Id.* at 1440-42.   Without doubt, the EEOC's actions have negatively affected the Court's management of its docket and have caused unnecessary burdens on the opposing party and delays in my preparing this case for Chief Judge Krieger to try.  I do not believe it is the proper application of justice to stand idly by while the Plaintiff's flip-flopping harms the Defendant in a tangible way that is violative of the spirit of the Federal Rules of Civil Procedure, as encapsulated in Fed. R. Civ. P. 1 and its declaration that this Court should construe and administer the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."  A remedy is necessary here.

In *Mulvaney*, the Tenth Circuit instructed that a district court should impose only so much of a sanction as is necessary to ensure that the offending conduct stop.  I believe that awarding Defendant its reasonable fees in prosecuting this Motion will suffice for that purpose.  That is the sanction that I impose under Fed. R. Civ. P. 16(f) for the unnecessary waste that the EEOC has caused here.[6]  In so doing, I have not lost sight that this Motion concerns a request for sanctions

---

[6]In part, I do not award any additional fees because of Defendant's noncompliance with D.C.COLO.LCivR 54.3, which requires any motion for attorney's fees to be accompanied by affidavits detailing the fees sought and the qualifications of the attorneys for whom fees are claimed.

against the executive branch of the United States.  However, I am not to treat the EEOC any differently in this regard than I would a private party.  *E.g.*, *Chilcutt v. U.S.*, 4 F.3d 1313, 1325 (5th Cir. 1993).  I also decline to impose anything more punitive because, as I stated during the oral argument, the EEOC's conduct is mitigated somewhat by the fact that several of the contentious discovery issues discussed above arise from electronically stored information and the relatively untested waters in which litigants and the courts find themselves in that regard.  Moreover, of late, EEOC counsel has been very cooperative in moving the case along.  But in light of the circumstances described above, the EEOC was not as cooperative previously in this case, or compliant with its commitments and obligations as it should have been, resulting in damage to Defendant.

Therefore, the Motion for Sanctions filed by Defendant [filed December 12, 2012; docket #267] is **granted in part and denied in part**.  The EEOC shall pay the reasonable attorney's fees and costs expended in bringing this Motion.  Defendant shall submit the information as required by this Court's Local Rules on or before March 8, 2013.

Dated at Denver, Colorado, this 27th of February, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge